## Silverstein v. Kreitzer

*Wisler, Pearlstine, Talone & Gerber*, for plaintiff.
*High, Swartz, Childs & Roberts*, for defendant.

FORREST, J., October 19, 1955.—This case calls for a determination of the scope of oral examination permissible under Pa. R. C. P. 4007(a), in a proceeding for a partnership accounting. This rule provides in part: ". . . the deponent may . . . be examined regarding any matter . . . which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case." Plaintiff herein prepared her complaint without invoking the rule. She has alleged that she entered into a written partnership agreement with defendant for the conduct of a retail drugstore in Ambler, that the agreement is still in force, that the business has always been profitable, that defendant has been the manager, that defendant's husband has been a salaried employe and that plaintiff never participated in management, that the statements of profit and loss for the fiscal years ending September 1949 to 1953, inclusive, do not disclose the true profits for the reason that they show considerably less than the usual profits of 33 percent of gross sales in such a

business and, as to 1953, for the additional reason that though the sales in 1953 considerably exceeded those in 1952, the net profit for 1953 dropped at least 25 percent. The complaint concludes with several prayers for relief of which the only one presently material is that an audit of the records from the year 1950 to date be made and that defendant be required to pay to plaintiff the amount shown to be due and payable thereby.

Defendant's answer denies that the gross profit of the business was less than customary. She further alleges that the records were continuously supervised by plaintiff, through A. L. Diamond & Co., the auditor for the partnership, which had been chosen by plaintiff, and that such records as prepared by the auditor were correct. The answer sets forth that the decrease in profits for 1953 below 1952 resulted from a loss in the soda fountain department which was ultimately discontinued by agreement of the parties in order to eliminate further losses. In accordance with stipulation of counsel, the court entered a decree directing defendant to prepare and furnish plaintiff with a complete accounting of the partnership affairs from October 1, 1945, to September 30, 1954. Pursuant to said decree, on November 1, 1954, a "Statement of financial condition, with accountant's report and supplementary data" as of September 30, 1954, re "Ambler Drug Store" was filed. This gave a balance sheet as to September 30, 1954, and "statement of earnings" for the year ended September 30, 1954. Moreover, at the taking of depositions on December 27, 1954, the cash receipt and disbursement books for the years 1945 to September 30, 1953, were produced.

It appears that these voluminous records have been in the joint possession of, or accessible to, both plaintiff and defendant for months so as to constitute "service

of a copy of the account" within the intent and purpose of Pa. R. C. P. 1530(c). This rule provides that: "Each party shall be served with a copy of the account in the same manner as a pleading. Exceptions may be filed to the account within twenty (20) days after service." An examination of the docket in the office of the prothonotary discloses that neither exceptions to the "Statement" actually filed in such office nor to the books produced for the years 1945 to September 30, 1953, have been filed. The general rule is that an account will be confirmed unless exceptions are filed: Simon v. Yantorn, 81 D. & C. 195 (1952). Plaintiff has neither specifically nor generally excepted. However, proceeding on a proposition that the accounting is partially or wholly fictitious she is making preparations to prove her case by attempting to uncover evidence of defendant's receipts from undisclosed sources. From such anticipated evidence she would have an inference drawn that defendant misapplied the partnership assets.

In the search for such evidence, plaintiff placed defendant under oath and took her deposition under Pa. R. C. P. 4007(a). The defendant stated that the radical drop in profits for the year 1954, as shown by the books, was accounted for by the fact that in 1954 her salary of $100 per week was listed as a deductible expense, whereas her similar salary in former years beginning October 1951 had not been so shown on the books. Further, she stated that expenses in 1953 and 1954 were greater than formerly, and that one of the increases was a raise of $4,000 in the salary of her husband. She denied pocketing any proceeds of sales or other cash received in 1948 or in any subsequent year. She admitted that she never did, and does not now, keep the cash register slips and that the only bookkeeping entries of sales are the records of deposits made periodically in the bank.

Defendant followed the advice of her counsel and refused to answer questions which would require her to produce or disclose (1) her personal income tax returns for the years 1947-1950, inclusive, although counsel did state for the record that the figures appearing on the personal returns were the same as those appearing on the partnership return which was made available to plaintiff; (2) what real estate she owns in her own name or in her husband's name; (3) what moneys she had when she entered into the partnership other than she put into the partnership; (4) whether she had any cash; (5) whether she or her husband opened a safe deposit box or removed any cash or securities from a safe deposit box within the last six months; (6) whether individually or jointly with her husband she owns shares of stock, bonds or other securities.

Pursuant to Pa. R. C. P. 4019(b), plaintiff has filed an application for an order compelling defendant to answer the questions. Defendant has replied by contending (1) that the sought for information is not relevant, (2) that it will not aid in the preparation or trial of the case as required by Pa. R. C. P. 4007(a), and (3) that to require her to answer the questions would cause her "unreasonable annoyance, embarrassment (or) oppression", which is expressly prohibited by Pa. R. C. P. 4011(b). She cites Wolf et al. v. Lisker, 86 D. & C. 356 (1954), as authority. However, that case was decided under the rule before it was amended so as to permit examination regarding any matter which "will substantially aid in the preparation . . . or trial of the case". Therefore, it is not presently persuasive.

The burden of proving that an accounting is incorrect, lies upon the party excepting thereto: Yulsman v. DuBois, 150 Pa. Superior Ct. 553 (1942); Vollet v. Pechenik, 67 York 35 (1953). Plaintiff contends

that the information sought to be elicited will aid in sustaining such burden. According to her brief she intends to establish her case "by showing what the total net worth of the defendant and of her husband was at the beginning of the partnership, and by showing increases in their net worth for each succeeding year during the period in question. If the resulting figure for any year or for the total years is substantially greater than the income received by them as stated in the books of the partnership, and if the defendant fails to account for the increase, it is plaintiff's contention that the unexplained excess represents . . . income from the partnership".

In Saake v. Dorner, 167 Pa. 301, 305 (1895), the court stated: "There is no presumption arising from a wife's possession of money that she stole it from her husband, and if he alleges that she took it from him . . . he must support his accusation by evidence." A fortiori no presumption or inference of a partner's wrongdoing arises or may be drawn solely from the fact of ownership or increase of ownership of property by such partner, if such is the fact. Such ownership or increase might stem from other activities, thrift, gifts or good fortune. "The ordinary rules as to the admissibility and sufficiency of evidence in civil actions govern the admissibility and sufficiency of the evidence on the taking of an accounting in equity": 1 C. J. S. 679, including a partnership accounting: 68 C. J. S. 972. " 'The law furnishes no test of relevancy, but tacitly refers it to logic and general experience. Evidence is admissible which tends to make the fact at issue more or less probable or intelligible . . .' "; Gregg v. Fisher, 377 Pa. 445, 454 (1954).

Plaintiff strenuously contends that defendant's change of net worth is relevant. The only authorities cited by her are a number of recent decisions involving prosecutions for evasion of Federal income tax, wherein

the Supreme Court of the United States has ruled that evidence that a taxpayer's increase in net worth over a taxable period exceeds the difference between his reported gross income and his expenditures, including living expenses, is admissible to raise an inference of fraud: Holland et ux. v. United States, 348 U. S. 121 (1954); Friedberg v. United States, 348 U. S. 142 (1954); Smith v. United States, 348 U. S. 147 (1954); and United States v. Calderon, 348 U. S. 160 (1954). The Supreme Court undoubtedly took cognizance of the difficulty frequently encountered by law enforcement agencies in establishing a case of income tax evasion by the use of conventional methods. Furthermore, apart from increases in wealth, resulting from gifts (which are easily provable by the taxpayer in the average instance), virtually all increases in net worth are taxable. Therefore, in income tax cases this collateral fact of increase in net worth readily supports an inference that the taxpayer received taxable income. Even in the tax cases, however, the court recognized that the net worth method "is so fraught with danger for the innocent that the courts must closely scrutinize its use". A person "may be entirely honest and yet unable to recount his financial history": Holland v. United States, supra. It appears in the case at hand that the collateral facts sought to be elicited, except for certain income tax items, would not, in any direct manner, furnish the basis for any inference whatever as to the principal matters in dispute. It appears that they would not even tend to make the possible facts at issue more or less probable, but rather would lead endlessly to excursions into all the details of a partner's personal affairs.

In this case defendant by her own admission has deliberately permitted, and continues to permit, the destruction of the cash register slips, which in a business such as this constitute the original entries of cash

receipts. The complaint in equity insinuates that defendant has been perpetrating a fraud upon plaintiff. At a trial upon exceptions to the accounting, if credible evidence of fraud is presented or if it appears that defendant has not fulfilled her duty to keep correct records of partnership transactions in accordance with the standards which are required under all of the circumstances, as to which see Bracht v. Connell et al., 313 Pa, 397, 405 (1933), it may be that the examination now sought should be allowed in whole or in part. We are of the opinion, however, that it should not be allowed at this time.

And now, October 19, 1955, it is ordered, adjudged and decreed that plaintiff's application for an order compelling defendant to answer certain questions, under penalty of contempt, is denied.